**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**

| | |
|---|---|
| BELFER COSMETICS, LLC, | ) |
| | ) |
| *Plaintiff,* | ) Civ. Case No. 15-CV-683 |
| | ) |
| -v- | ) |
| | ) |
| NORDSTROM, INC. and | ) Hon. Lee H. Rosenthal |
| ERNO LASZLO, INC., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**DEFENDANTS' MOTION TO SEVER THE ACTION AGAINST ERNO LASZLO, INC.; TRANSFER VENUE OF THE SEVERED ACTION; AND STAY THE ACTION AGAINST NORDSTROM, INC.**

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

TASO PARDALIS (*admitted pro hac vice*)
*Attorneys for Defendants*
35-10 Broadway – Suite 201
Astoria, New York 11106
T: 718.777.0400
F: 718.777.0599
E: taso@pnlawyers.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. 2

INTRODUCTION.............................................................................................. 3

THE PARTIES.................................................................................................. 3

STATEMENT OF FACTS.................................................................................. 3

ARGUMENT.................................................................................................... 6

    POINT I: THE ACTION AGAINST EL SHOULD BE SEVERED AND
    THEREAFTER TRANSFERRED TO THE SOUTHERN DISTRICT OF
    NEW YORK...................................................................................... 6

      *A.  Severance Against EL is Appropriate*.............................. 7

      *B. The Southern District of New York Is More Convenient and the Severed
      Case Against EL Should Be Transferred To That Forum*.......................... 9

        1.   Private Interest Factors................................................. 10

          *a)  Relative Ease of Sources*.................................. 10

          *b)  Availability of Compulsory Process and Convenience
          of Witnesses*................................................. 10

          *c)  The Cost of Attendance for Willing Witnesses*.................. 11

          *d)  All Other Practical Problems That Make a Trial Easy,
          Expeditious and Inexpensive*............................... 11

        2.   Public Interest Factors................................................. 12

    POINT II: THE COURT SHOULD STAY THE ACTION AGAINST NORDSTROM
    PENDING THE REOLUTION OF THE SEVERED ACTION AGAINST EL........ 13

CONCLUSION................................................................................................ 14

1

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*Anderson v. Red River Waterway Comm'n*, 231 F.3d 211 (5th Cir. 2000)........................  7

*ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112 (E.D. Tex. 2009)...............................  9

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761 (E.D. Tex. 2009)...........................12, 13

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010)......................................  13

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)...........................................  11

*In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014)....................................  11

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008)......................................  9

*In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) ...........................................  12

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004)...............................................  11

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)...............................9, 10

*Koh v. Microtek Int'l, Inc.* 250 F. Supp. 2d 627 (E.D. Va. 2003).......................7, 10

*L.G. Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804 (E.D. Va. 2001)...................................................................................................  9

*Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206 (5th Cir. 2010)........................  7

*Shifferaw v. Emson USA*, 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D.Tex Mar. 18, 2010).....................................................................................................8, 10

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660 (E.D. Tex. Feb. 9, 2005)....................................................................................................  13

*Uniloc USA, Inc. v. Sony Corp. of Am.*, No. 6:10-cv-373, 2011 U.S. Dist. LEXIS 54541 (E.D. Tex. May 20, 2011)................................................................................  6

*Wyndham Assocs. v. Bintliff*, 398 F.2d 614 (2nd Cir. 1968)................................  7

**Rules and Statutes**                                                                              **Pages**

28 U.S.C.§ 1404................................................................................8, 9, 11

28 U.S.C.A§ 1400...............................................................................  9

Fed. R. Civ. P. 21..............................................................................  7

2

**INTRODUCTION**

Defendant Erno Laszlo, Inc. ("EL") has been accused by Belfer Cosmetics, LLC (the "Plaintiff") of infringement of one or more claims of two asserted patents based on certain cosmetic products that were made, used, offered for sale and sold by EL. Defendant Nordstrom, Inc. ("Nordstrom") is implicated in this action by virtue of its sale, and offer for sale, of EL's products in its stores. EL and all of its witnesses who will attest to the underlying facts of this case and the facts supporting EL's defenses, as described below, are all located in New York.

Accordingly, it is respectfully requested that the Court sever the case against EL and transfer the action to the Southern District of New York pursuant to FRCP 21 and 28 U.S.C. § 1404. Contemporaneously, EL and Nordstrom (collectively, "Defendants") submit that the case against Nordstrom, a mere retailer of EL's products, should be stayed pending the outcome of the severed action, as a determination of prior commercial or non-infringing use of EL's products in the severed action would relieve Nordstrom of any liability. Moreover, Nordstrom is indemnified by EL such that, in the unlikely event of an adverse ruling against EL, any judgment against Nordstrom would be satisfied by EL, as explained in the contemporaneously-filed declaration of Patricia Schuffenhauer, EL's Chief Brand Officer.

**THE PARTIES**

EL is a domestic New York corporation with a principal place of business located at 129 West 29th Street, 8th Floor, New York, NY 10001. Nordstrom is a Washington corporation with a principal place of business located at 1700 7th Avenue, Suite 700, Seattle, WA 98101. Plaintiff is a corporation with a principal place of business located at 26 Tudor Drive, Ocean, NJ 07712.

**STATEMENT OF FACTS**

EL is the owner of a cosmetic product series called "Transphuse," which is a line of anti-

3

wrinkle products, specifically named Transphuse Day Serum, Transphuse Night Serum, and Transphuse Eye Refiner (collectively, the "Transphuse Products"). *See*, annexed Declaration of Patricia Schuffenhauer ("Schuffenhauer Declaration") at ¶ 3. The Transphuse Products all consist of the same underlying formula containing certain chemical peptides and *acmella oleracea*, a plant extract that produces Botox-like effects to prevent facial skin wrinkles; it is a common anti-wrinkle product ingredient with a long history of use, particularly in foreign cosmetic products. *Id.* at ¶ 4.

In late 2003/early 2004, EL contracted business with Raffaelo, a cosmetic product formulator, in order to begin the development of the underlying formula containing *acmella oleracea* used in the Transphuse Products. Schuffenhauer Declaration, ¶ 5. In 2004, after the initial development of the underlying formula, EL contracted with a manufacturer, Thibiant, whereby safety and efficacy of the formula was tested until the first of the Transphuse Products, the Transphuse Day Serum, was finalized and shipped to EL's warehouse on August 16, 2005. *Id.* at ¶ 6. *See also*, **EXHIBIT A** for emails of development discussions between August 2004 to August 2005 with Raffaelo and shipment of Transphuse Day Serum by Thibiant to EL's warehouse).

While the Transphuse Day Serum was launched in September 2005 for commercial sale, two offspring products containing the same underlying formulaic composition (Transphuse Night Serum and Eye Refiner) were not launched until November 2006 because of a switch in manufacturers from Thibiant to Mana. *Id.* at ¶ 7. Pursuant to a long-time contractual agreement, Nordstrom began selling EL's Transphuse Products within Nordstrom's various retail stores throughout the United States in 2011. *Id.*, ¶ 8.

On August 15, 2006, Plaintiff filed for the '464 Patent, which was based on a provisional U.S. Patent application filed on September 1, 2005. On July 20, 2009, Plaintiff filed for the '907 Patent, which was also based on the provisional U.S. Patent application filed on September 1, 2005. The '464 Patent issued on July 28, 2009, and the '907 Patent issued on September 27, 2011. *See*, a copy of both patents annexed hereto as **EXHIBIT B**.

In its Complaint, filed on March 13, 2015, Plaintiff asserts that Defendants, by way of the *acmella oleracea* formula in the Transphuse Products, directly and/or indirectly infringe the '464 and '907 Patents. Ct. Dkt. No. 1, pp. 2 & 4. As one defense to Plaintiff's allegations, EL contends that Plaintiff's claims against it are statutorily barred pursuant to 35 U.S.C §273(a), which precludes liability for commercial use of a patented invention in a way that would otherwise be infringing if it can be shown through clear and convincing evidence that: (i) the invention was sold in good faith or at actual arm's length; and (ii) that said use occurred at least one year before the earlier of the allegedly infringed patent's filing date *or* the date the patent was disclosed to the public. EL intends to establish that no infringement has occurred, at least because the Plaintiff's allegations against the parties are statutorily barred pursuant to 35 U.S.C. § 273(a) in view of EL's prior commercial uses. EL also alleges defenses of non-infringement based on prior art.

Since commencement of this action, Defendants have learned that Plaintiff is not currently in the business of using, selling, promoting, or marketing any products related to the patents at issue, but has sold some patented products years ago to just one company called *L'image Medical Cosmetics, LLC. See*, Plaintiff's Supplemental Response to Court, Ct. Dkt. No. 25, annexed hereto as **EXHIBIT C**. Within Plaintiff's patent prosecution file, Defendants came to discover that *L'image Medical Cosmetics* was a company based in Florida, that has since dissolved, but was managed in part by William Belfer himself, the owner of the corporate

Plaintiff and the allegedly infringed patents. *See*, Exhibit B at patent abstracts demonstrating named owner of patents as William Belfer; *see also*, **EXHIBIT D** for a copy of *L'image Medical*'s corporate information. Defendants have also since discovered that Plaintiff has entered into a multitude of other patent litigations against cosmetic companies for infringement of the same patents, all of which have entered into settlements. *See*, **EXHIBIT E** for multiple identical complaints filed by Plaintiff against other substantial cosmetic companies.

The parties in the action have since engaged in the exchange of discovery, including submission of witnesses. Defendants have named a witness from EL as well as a witness involved in the formulation of the Transphuse formula at Raffaelo. The witnesses are all located in New York. *See*, Defendant EL's Interrogatory Responses at Interrogatory No. 10, annexed hereto as **EXHIBIT F**.

<u>**ARGUMENT**</u>

**I.   THE ACTION AGAINST EL SHOULD BE SEVERED AND THEREAFTER TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.**

Devising procedural solutions to facilitate efficient, fair and cost-efficient resolution to multi-defendant patent litigations is not uncommon in this District, and is particularly necessary in situations where a plaintiff that is suing multiple defendants has engaged in suspicious tactics, thereby requiring the court to "level the playing field." *See, Uniloc USA, Inc. v. Sony Corp. of Am.*, No. 6:10-cv-373, 2011 U.S. Dist. LEXIS 54541 at pp. 23-24 (E.D. Tex. May 20, 2011)(demonstrating concern "about cases where a plaintiff asserts questionable patent claims against a large number of Defendants to extract cost of defense settlements.").

Here, the Plaintiff has a very tenuous connection to the Southern District of Texas and appears to have sought to litigate here based on its practice of suing many cosmetic companies in this district. *See*, Exhibit E. This, in combination with Plaintiff's virtually non-existent use of its

own patents raises questions as to Plaintiff's motive to litigate in Texas. *See*, Exhibit C & D demonstrating the sale of a few patented products to a Florida company managed by William Belfer himself. Therefore, as more fully set forth below, the Defendants respectfully request that this Court "level the playing field," and allow for the severance and transfer of the claims against EL while staying the action against Nordstrom, as this devised procedural solution would certainly facilitate an efficient, fair and cost-efficient resolution to this patent litigation.

### A. Severance Against EL is Appropriate

EL requests that this Court sever the claims against it as a predicate to transferring venue of the severed action to the Southern District of New York. Due to the fact that district court judges "have broad discretion in managing their own dockets" (*see*, *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010)), district courts thereby also have broad discretion to sever under FRCP 21. *See*, *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Further, FRCP 21 provides in pertinent part that "[a]ny claim against a party may be severed and proceeded with separately."

In patent infringement cases, courts will consider three factors when deciding to sever a claim. Those factors include (1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the transfer of the remaining claims otherwise is warranted under § 1404(a). *Koh v. Microtek Int'l, Inc.* 250 F. Supp. 2.d 627 (E.D. Va. 2003). Additionally, FRCP 21 provides district courts with considerable latitude to order severance solely for the purposes of transfer. *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2nd Cir. 1968).

In *Koh v. Microtek*, a motion to sever and stay the proceedings against a retailer was granted because the Court held the retailer was peripheral to the main issue of the litigation. *Koh*

*v. Microtek*, 250 F. Supp. 2.d 627. Here, Nordstrom is a mere retailer for EL's Transphuse Products; Nordstrom did not have any involvement in the products' manufacture or formulation. *See*, Nordstrom's Interrogatory responses, **EXHIBIT G**. The Plaintiff's claims against Nordstrom are therefore peripheral to the Plaintiff's claims against EL which are predicated on the composition of the underlying cosmetic compound. *See*, *Shifferaw v. Emson USA*, 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D.Tex Mar. 18, 2010)(in granting motion to sever and transfer case against manufacturer of infringing products to S.D.N.Y, court finds that "claims against Retailer Defendants are peripheral" to claims against manufacturer).

As a mere retailer of those compounds, to the extent that the claims against EL are resolved in Plaintiff's favor, any judgment against EL would necessarily relieve Nordstrom of additional liability for the products supplied by EL to Nordstrom, as Plaintiff would not be entitled to double recovery for the same product. *Id.* (court concludes, if infringing manufacturer is held liable, then allowing plaintiff to recover damages from both the manufacturer and retail defendants would constitute double recovery of damages.). Moreover, to the extent that EL establishes a non-infringement or invalidity defense to Plaintiff's claims, the remaining claims against Nordstrom would be rendered moot and thereby disposed of. Thus, the first and second factors in the severance analysis weigh in the Defendants' favor.

Finally, as described in detail below, transfer of the claims against EL to the Southern District of New York is warranted under the Court's inherent authority pursuant to 28 U.S.C. § 1404(a). EL has established that this case could properly have been brought in the Southern District of New York and, more importantly, that it should have been brought in the Southern District of New York for the convenience of the parties and the witnesses, and for the Southern District's proximity to relevant evidence.

***B. The Southern District of New York Is More Convenient and the Severed Case Against EL Should Be Transferred To That Forum***

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. When a movant demonstrates that another venue is clearly more convenient, the court should grant the transfer. *See, In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (*"Volkswagen II"*) and *In re TS Tech USA Corp.,* 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law). The Court should exercise its power to transfer the case against EL pursuant to § 1404.

In a § 1404(a) analysis, the threshold question is whether the action "might have been brought" in the proposed transferee district. *Volkswagen II,* 545 F.3d at 312. If the transferee venue is determined to be proper, the Court then can proceed to analyze several private and public interest factors. *See, ATEN Int'l Co. v. Emine Tech. Co.,* 261 F.R.D. 112, 123 (E.D. Tex. 2009). Should analysis of these factors result in the determination that another venue is "clearly more convenient," the case not only may, but should, be transferred. *Volkswagen II,* 545 F.3d at 315; *In re TS Tech,* 551 F.3d at 1319.

To demonstrate that an action might have been brought in the proposed transferee district, the movant must establish that venue and jurisdiction is proper in the proposed district. *L.G. Elecs. Inc. v. Advance Creative Computer Corp.,* 131 F. Supp. 2d 804, 812 (E.D. Va. 2001). Patent infringement actions may be brought in the judicial district where the defendant resides, or has a regular and established place of business. *See,* 28 U.S.C.A § 1400(b).

Here, Defendant EL conducts business solely out of its New York office, located at 129 West 29th Street, New York, NY 10001, which is wholly within the Southern District of New York. Defendant EL is organized under the laws of New York State, and has its principal place

9

of business in New York; these facts establish the propriety of venue and jurisdiction in the Southern District of New York. Thus, due to the fact that the claims could have been brought against EL in New York, the threshold is met and the Court has discretion to transfer venue of this action based on the weighing of convenience factors and factors "in the interest of justice." *Koh*, 250 F. Supp. 2d 627, citing *Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). *See also, Shifferaw, supra* at *4 (court finds transfer to S.D.N.Y was proper).

　　1.　Private Interest Factors

　　　Courts in the Fifth Circuit evaluate the following non-dispositive and non-exhaustive private interest factors when determining a request for venue transfer: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." *Volkswagen II,* 545 F.3d at 315.

　　　*a)　Relative Ease of Sources*

　　　Courts still analyze whether large amounts of documents, or evidence, must be transported to the trial venue from their existing location. *Id.* at 316. Because EL conducts and runs its business only out of New York, all documents and other items of evidence which will be used to establish EL's non-infringement and prior commercial use defenses are in New York. Similarly, any evidence which Plaintiff might seek from EL related to the alleged acts of infringement involving the underlying Transphuse Products are located in New York. This factor thus favors transfer.

　　　*b)　Availability of Compulsory Process and Convenience of Witnesses*

　　　Transfer is favored when third party witnesses reside in the transferee venue. *Id*. For the convenience of witnesses, courts consider all potential material and relevant witnesses, despite

their importance to any party's case, and whether the witnesses reside or work within 100 miles of the court. *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014). In the instant matter, Defendants have named two witnesses that are both located in New York. *See*, Defendant EL's Interrogatory Responses at Interrogatory No. 10, annexed hereto as **EXHIBIT F**. Any other witnesses, whether produced on behalf of EL or sought by the Plaintiff for deposition in connection with its attempt to satisfy its burden of proof on infringement, will originate from the pool of witnesses comprised of EL employees, all of whom reside in, or at least within 100 miles of, the Southern District of New York. Thus, this factor also weighs in favor of transfer.

### c) The Cost of Attendance for Willing Witnesses

The "cost of attendance for willing witnesses" factor, which is arguably the most important factor (*See, In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)), strongly favors transfer to New York. Specifically, transfer to the Southern District of New York would substantially reduce the travel burden for Defendant EL's witnesses, all of whom reside in New York. Even under the Fifth Circuit's prevailing "100-mile rule," which holds that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled," the Southern District of New York still stands as more convenient for the parties' witnesses. *In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004) (*"Volkswagen I"*).

### d) All Other Practical Problems That Make a Trial Easy, Expeditious and Inexpensive.

No party to the instant litigation bears any tangible connection to the Southern District of Texas – Houston, other than Plaintiff's counsel; however, it cannot be disputed that the case has a substantial, tangible connection to New York, particularly in relation to the Transphuse

Products' formulation, creation, manufacture and sale to other retailers. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346-47 (Fed. Cir. 2010) (no abuse of discretion in denying transfer to district with no ties to any party). Also, EL respectfully submits that transfer to New York will benefit Plaintiff as well as EL, as William Belfer himself resides in New Jersey, a neighboring state of New York. *See*, patent abstracts in Exhibit B, detailing Belfer's New Jersey address. This would certainly add to the ease of logistics, and decrease in expense, in litigating this case in the Southern District of New York.

    2.  <u>Public Interest Factors</u>

    In addition to the private interest factors, Courts also consider the following non-dispositive and non-exhaustive public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009). Factors (1) and (4) are not relevant to the analysis here, as neither this Court nor the Southern District of New York would impart any administrative difficulties to the resolution of the case, nor does the subject matter of the case involve any issues related to conflict of laws. Similarly, both the Court and the Southern District of New York are sufficiently familiar with the patent laws of the United States to adjudicate this matter, rendering factor (3) neutral to the analysis. Accordingly, the only relevant public interest factor relates to the local interest in this matter.

    EL can discern no local interest that the Southern District of Texas may have in this case. The only connection the parties have to this District is the location of the Plaintiff's chosen attorneys. By contrast, the Southern District of New York has a strong connection to the dispute

between EL and the Plaintiff. EL is headquartered within the Southern District of New York, and EL's accused products were formulated, manufactured and sold by EL in New York. *See*, Exhibit F for EL Interrogatory Responses. EL's witnesses also reside in the proposed district. *Id.* In other words, the Southern District of New York has a strong "particularized local interest" in this dispute. *Fujitsu*, 639 F. Supp. 2d at 769 ("Because the accused products are designed and developed in Illinois and Defendants' principal places of business are located within the Northern District of Illinois, that district certainly has a particularized local interest in the dispute."). *See also*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, [the local interest] factor should be weighed in that venue's favor."). Thus, this public interest factor weighs heavily in favor of venue transfer.

## II.   THE COURT SHOULD STAY THE ACTION AGAINST NORDSTROM PENDING THE RESOLUTION OF THE SEVERED ACTION AGAINST EL.

Courts evaluate three factors when considering a stay of claims, which are "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and   (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. Feb. 9, 2005).

Here, a stay of the proceedings against Nordstrom in the Southern District of Texas - Houston pending the outcome of the severed action against EL will not prejudice the Plaintiff because the matter is still in the very early stages of litigation and therefore transfer will cause no undue delay. Most importantly, the resolution of the claim against EL will be dispositive of the claims against Nordstrom; specifically, should EL's products be deemed non-infringing or used commercially in good faith prior to the filing of Plaintiff's patents, then such non-infringing use

13

would extend to Nordstrom, a secondary party that merely retails the Transphuse Products. Conversely, if Plaintiff is able to establish that EL's product is infringing, such a finding would be applicable to Nordstrom's sale of those products as well. Thus, a stay will protect Plaintiff's potential claims against Nordstrom and would not result in any prejudice to the Plaintiff.

Additionally, in accordance with the second factor, a stay will simplify the case because the primary issues in the case relate to EL's formulation of the cosmetic compound which it sold to Nordstrom for further retail sales. A stay as to Nordstrom will focus the trial on those primary issues which involve only Plaintiff and EL; Nordstrom is a tangential player in the dispute and having Nordstrom on the sideline while the primary issues are resolved between Plaintiff and EL will streamline and reduce the resources and time needed for trial.

Finally, as discovery has only just begun between the parties and no trial date has yet been set, it would not be untimely for the Court to exercise its discretion to grant a stay as to Nordstrom pending resolution of the severed action against EL.

## CONCLUSION

For all the foregoing reasons, the Court should enter an order severing the claims against EL pursuant to FRCP 21, transferring those claims to the Southern District of New York pursuant to 28 U.S.C. § 1404, and staying the action against Nordstrom, pursuant to FRCP 26, pending the outcome of the severed action.

Dated: Astoria, New York
      December 28, 2015

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

By: _____

TASO PARDALIS (*admitted pro hac vice*)
*Attorneys for the Defendants*
35-10 Broadway Suite 201
Astoria, NY 11106
Tel.: (718) 777 0400/Fax.: (718) 777 0599

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**

| | |
|---|---|
| BELFER COSMETICS, LLC, | ) Civ. Case No. 15-CV-683 |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| -v- | ) **AVERMENT** |
| | ) |
| NORDSTROM, INC. and | ) |
| ERNO LASZLO, INC., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

The Defendants, Nordstrom, Inc. and Erno Laszlo, Inc., hereby move this Court for an order severing the claims against EL pursuant to FRCP 21, transferring those claims to the Southern District of New York pursuant to 28 U.S.C. § 1404, and staying the action against Defendant Nordstrom, pursuant to FRCP 26, pending the outcome of the severed action. Pursuant to Local Court Rule 7.7, on **November 5, 2015,** counsel for Defendants contacted counsel for Plaintiff, at which time, Plaintiff's counsel indicated that it would not concur in a severance and transfer of the action against Defendant Erno Laszlo, Inc. while staying the action against Defendant Nordstrom, Inc. This motion is, therefore, necessary.

Dated: Astoria, New York
     December 28 , 2015          Respectfully submitted,

                             **PARDALIS & NOHAVICKA, LLP**

By: _____
                    TASO PARDALIS (*admitted pro hac vice*)
                    *Attorneys for the Defendants*
                    35-10 Broadway Suite 201
                    Astoria, NY 11106
                    Tel.: (718) 777 0400/Fax.: (718) 777 0599
                    taso@pnlawyers.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS-HOUSTON DIVISION

| | |
|---|---|
| BELFER COSMETICS, LLC, ) | |
| ) | Civ. Case No. 15-CV-683 |
| *Plaintiff,* ) | |
| -v- ) | |
| ) | |
| NORDSTROM, INC. and ERNO LADZLO, INC., ) | **CERTIFICATE OF SERVICE** |
| ) | |
| *Defendants.* ) | |
| ) | |

I HEREBY CERTIFY that on January 4, 2016, the foregoing **DEFENDANTS' MOTION TO SEVER THE ACTION AGAINST DEFENDANT ERNO LASZLO, INC., TRANSFER VENUE OF THE SEVERED ACTION, AND SUBJECT THERETO, STAY THE ACTION AGAINST DEFENDANT NORDSTROM, INC.** was served by mail in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas upon the following participants:

C. Dale Quisenberry
Polasek, Quisenberry & Errington, LLP
6750 West Loop South, Suite 209
Bellaire, Texas 77401

Dated: Astoria, New York
      January 4, 2016

**PARDALIS & NOHAVICKA**

By: _____
Taso Pardalis (*admitted pro hac vice*)
Attorneys for the Defendants
35-10 Broadway, Suite 201
Astoria, NY 11106
Tel.: (718) 777-0400/ Fax: (718) 777-0599

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION

| | |
|---|---|
| BELFER COSMETICS, LLC, | ) |
| | ) |
| *Plaintiff,* | ) Civ. Case No. 15-CV-683 |
| | ) |
| -v- | ) |
| | ) |
| NORDSTROM, INC. and | ) Hon. Lee H. Rosenthal |
| ERNO LASZLO, INC., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

### DECLARATION OF PATRICIA SCHUFFENHAUER IN SUPPORT OF DEFENDANTS' MOTION TO SEVER THE ACTION AGAINST ERNO LASZLO, INC.; TRANSFER VENUE OF THE SEVERED ACTION; AND STAY THE ACTION AGAINST NORDSTROM, INC.

PATRICIA SCHUFFENHAUER declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.     I am a member of Erno Laszlo, Inc. ("EL"), one of the corporate defendants in the above-captioned matter. I submit this declaration in support of defendants' motion to sever the action against EL and transfer the severed action to the Southern District of New York, while staying the matter against co-defendant, Nordstrom, Inc. ("Nordstrom").

2.     This declaration is made upon personal knowledge, except where otherwise noted.

3.     EL is the owner of a cosmetic product series called "Transphuse," which is a line of anti-wrinkle products, specifically named Transphuse Day Serum, Transphuse Night Serum, and Transphuse Eye Refiner (collectively, the "Transphuse Products").

4.     The Transphuse Products all consist of the same underlying formula containing certain chemical peptides and *acmella oleracea*, a plant extract that produces Botox-like effects

to prevent facial skin wrinkles. Upon information and belief, *acmella oleracea* is a common anti-wrinkle product ingredient with a long history of use, particularly in foreign cosmetic products.

5.      In late 2003/early 2004, EL contracted business with Raffaelo, a cosmetic product formulator, in order to begin the development of the underlying formula containing *acmella oleracea* used in the Transphuse Products.

6.      In 2004, after the initial development of the underlying formula, EL contracted with a manufacturer, Thibiant, whereby safety and efficacy of the formula was tested until the first of the Transphuse Products, the Transphuse Day Serum, was finalized and shipped to EL's warehouse on August 16, 2005. *See*, **EXHIBIT A for** emails of development discussions between August 2004 to August 2005 with Raffaelo and shipment of Transphuse Day Serum by Thibiant to EL's warehouse).

7.      While the Transphuse Day Serum was launched in September 2005 for commercial sale, two offspring products containing the same underlying formulaic composition (Transphuse Night Serum and Eye Refiner) were not launched until November 2006 because of a switch in manufacturers from Thibiant to Mana.

8.      Pursuant to a long-time contractual agreement, Nordstrom began selling EL's Transfuse Products within Nordstrom's various retail stores throughout the United States in 2011.

9.      On August 15, 2006, Plaintiff filed for the '464 Patent, which was based on a provisional U.S. Patent application filed on September 1, 2005. On July 20, 2009, Plaintiff filed for the '907 Patent, which was also based on the provisional U.S. Patent application filed on

September 1, 2005. The '464 Patent issued on July 28, 2009, and the '907 Patent issued on September 27, 2011. *See*, a copy of both patents annexed hereto as **EXHIBIT B**.

10.     In its Complaint, filed on March 13, 2015, Plaintiff asserts that Defendants, by way of the *acmella oleracea* formula in the Transphuse Products, directly and/or indirectly infringe the '464 and '907 Patents. Ct. Dkt. No. 1, pp. 2 & 4

11.     As one defense to Plaintiff's allegations, EL contends that Plaintiff's claims against it are statutorily barred pursuant to 35 U.S.C §273(a), which precludes liability for commercial use of a patented invention in a way that would otherwise be infringing if it can be shown through clear and convincing evidence that: (i) the invention was sold in good faith or at actual arm's length; and (ii) that said use occurred at least one year before the earlier of the allegedly infringed patent's filing date *or* the date the patent was disclosed to the public. EL intends to establish that no infringement has occurred, at least because the Plaintiff's allegations against the parties are statutorily barred pursuant to 35 U.S.C. § 273(a) in view of EL's prior commercial uses. EL also alleges defenses of non-infringement based on prior art.

12.     Since commencement of this action, Defendants have learned that Plaintiff is not currently in the business of using, selling, promoting, or marketing any products related to the patents at issue, but has sold some patented products years ago to just one company called *L'image Cosmetics*. *See*, Plaintiff's Statement to Court, annexed hereto as **EXHIBIT C**. Within Plaintiff's patent prosecution file, Defendants came to discover that *L'image Cosmetics* was a company based in Florida, that has since dissolved, but was owned by William Belfer himself, the owner of the corporate Plaintiff and the allegedly infringed patents. *See*, Exhibit B at patent

19

1  abstracts demonstrating named owner of patents as William Belfer; *see also*, **EXHIBIT D** for a

2  copy of *L'image*'s dissolution certificate.

3      13.    Defendants have also since discovered that Plaintiff has entered into a multitude

4  of other patent litigations against cosmetic companies for infringement of the same patents, all

5  of which have entered into settlements. *See.* **EXHIBIT E** for multiple identical complaints filed

6  by Plaintiff against other substantial cosmetic companies.

7      14.    The parties in the action have since engaged in the exchange of discovery,

8  including submission of witnesses.

9      15.    Furthermore, EL has indemnified Nordstrom in this action.

10

11      16.    I am one of the named witnesses on behalf of EL. Another named witness was

12  involved in the formulation of the Transphuse formula at Raffaelo. *See.* Defendant EL's

13  Interrogatory Responses at Interrogatory No. 10, annexed hereto as **EXHIBIT F**. Both myself

14  and this witness are all located in New York.

15      17.    I declare under penalty of perjury that the foregoing is true and correct.

16
17  Dated:  December 30, 2015
         New York, New York

18  PATRICIA SCHUFFENHAUER
19  Erno Laszlo, Inc., *Chief Brand Officer*
    129 West 29th Street, 8th Floor
20  New York, NY 10001

21

22

23

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS-HOUSTON DIVISION

| | | |
|---|---|---|
| BELFER COSMETICS, LLC, | ) | |
| | ) | Civ. Case No. 15-CV-683 |
| *Plaintiff,* | ) | |
| -v- | ) | |
| | ) | |
| NORDSTROM, INC. and ERNO LADZLO, INC., | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

I HEREBY CERTIFY that on January 4, 2016, the foregoing **DECLARATION OF PATRICIA SCHUFFENHAUER IN SUPPORT OF DEFENDANTS' MOTION TO SEVER THE ACTION AGAINST DEFENDANT ERNO LASZLO, INC., TRANSFER VENUE OF THE SEVERED ACTION, AND SUBJECT THERETO, STAY THE ACTION AGAINST DEFENDANT NORDSTROM, INC.** was served by mail in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas upon the following participants:

C. Dale Quisenberry
Polasek, Quisenberry & Errington, LLP
6750 West Loop South, Suite 209
Bellaire, Texas 77401

Dated: Astoria, New York
January 4, 2016

PARDALIS & NOHAVICKA

By:

Taso Pardalis (*admitted pro hac vice*)
Attorneys for the Defendants
35-10 Broadway, Suite 201
Astoria, NY 11106
Tel.: (718) 777-0400/ Fax: (718) 777-0599