**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**

| | |
|---|---|
| BELFER COSMETICS, LLC, | ) |
| | ) |
| *Plaintiff*, | ) Civ. Case No. 15-CV-683 |
| | ) |
| -v- | ) |
| | ) |
| NORDSTROM, INC. and | ) Hon. Lee H. Rosenthal |
| ERNO LASZLO, INC., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO SEVER AND TRANSFER THE ACTION AGAINST ERNO LASZLO,**
**INC. AND STAY THE ACTION AGAINST NORDSTROM, INC.**

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

TASO PARDALIS (*admitted pro hacvice*)
*Attorneys for Defendants*
35-10 Broadway – Suite 201
Astoria, New York 11106
T: 718.777.0400
F: 718.777.0599
E: taso@pnlawyers.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................ii

INTRODUCTION.....................................................................................................1

ARGUMENT............................................................................................................1

POINT I: SEVERANCE OF THE CLAIMS AGAINST EL IS PROPER
AND APPROPRIATE............................................................................................. 1

POINT II: THE TRANSFER OF THE SEVERED CASE AGAINST EL WOULD
BE PROPER AND APPROPRIATE AS THE SOUTHERN DISTRICT OF NEW
YORK IS A MORE CONVENIENT FORUM.......................................................3

    *A. Private Interest Factors*...............................................................................3

        1. Relative Ease of Sources...................................................................3

        2. Availability of Compulsory Process and Convenience of
        Witnesses .........................................................................................4

        3.  The Cost of Attendance for Willing Witnesses ...............................5

        4.  All Other Practical Problems That Make a Trial Easy,
        Expeditious and Inexpensive............................................................6

    *B. Public Interest Factors* ...............................................................................7

        1. The Administrative Difficulties Flowing From Court Congestion..........7

        2.The Local Interest in Having Localized Interests Decided at Home........8

POINT III: THE COURT SHOULD STAY THE ACTION AGAINST NORDSTROM
PENDING THE RESOLUTION OF THE SEVERED ACTION AGAINST EL...............8

POINT IV: THE TIME IN WHICH DEFENDANTS FILED THEIR MOTION
HASNO IMPACT OR BEARING ON THE MERITS OF THE MOTION AND
DOES NOT WARRANT THE MOTION'S DISMISSAL................................................11

CONCLUSION........................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                 **Pages**

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516 (5th Cir. 2010)..................................1

*Aerielle, Inc. v. Monster Cable Products, Inc.*, No. CIV.A. 206CV382TJW, 2007 WL 951639
(E.D. Tex. Mar. 26, 2007)........................................................................................................5

*ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112 (E.D. Tex. 2009)...........................................3

*BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F.Supp.2d 703 (N.D. Tex.2009)....................................5

*Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F.Supp.2d 663 (S.D.Tex.1999)...................6

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009).............................................................3, 5

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009)............................................................4

*In re Nintendo Co., Ltd.*, 544 Fed.Appx. 934, 941 (Fed. Cir. 2013)............................................10

*In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1364 (Fed. Cir. 2014)..................................1, 2, 3, 4

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008).......................................................7, 8

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)..............................................4, 5, 8

*Koh v. Microtek Int'l, Inc.* 250 F. Supp. 2.d 627 (E.D.Va. 2003).............................................3, 4

*Landis v. N. Am. Co.*, 299 U.S. 248, 249, 57 S. Ct. 163, 164, 81 L. Ed. 153 (1936).....................8

*Lear Corp. v. TS Tech USA, Inc.*, No. 2:07–CV–406 slip op. (E.D.Tex. Sept. 10, 2008)..............7

*LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057 (S.D.Tex.1998)..........................................5

*LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804 (E.D. Va. 2001).........2

*MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647 (S.D. Miss. 2013).......................2

*Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995 (E.D. Tex. 2009)............................................7, 8

*Peteet v. Dow Chem. Co.*, 868 F.2d 1428 (5th Cir. 1989).........................................................11

*Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D. Tex.
Mar. 18, 2010)........................................................................................................................3

1

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660 (E.D. Tex.
Feb. 9, 2005)...................................................................................................................9

**Rules and Statutes**                                             **Pages**

28 U.S.C.§ 1404....................................................................................................1, 3, 5

35 U.S.C. § 271(a)..........................................................................................................1

35 U.S.C. § 299..........................................................................................................1, 2

Fed. R. Civ. P. 21...........................................................................................................1

iii

**INTRODUCTION**

Defendants respectfully submit this Reply in Support of their Motion to Sever and Transfer the Claims Against Erno Laszlo, Inc. ("EL"), and Stay the Claims against Nordstrom, Inc. ("Nordstrom") (Dkt. 46).

**ARGUMENT**

## I. SEVERANCE OF THE CLAIMS AGAINST EL IS PROPER AND APPROPRIATE.

EL has requested that this Court sever the claims against it as a predicate to transferring venue of the severed action to the Southern District of New York. It is common practice for a District Court to authorize the transfer of "any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). *See also, In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1364 (Fed. Cir. 2014) (vacating lower court decision that denied motion to sever, stay and transfer).

In its opposition, the Plaintiff points to its satisfaction of the requirements for joinder under 35 U.S.C. § 299 as a basis for opposing severance. But the mere fact that Plaintiff has alleged facts sufficient to satisfy the standard for joinder does not divest this Court of the discretion and authority "to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)..

Plaintiff contends, for purposes of the Court's evaluation of whether severance is appropriate here, that the claims against Nordstrom are not peripheral to the claims against EL. Plaintiff relies simply on the fact that 35 U.S.C. § 271(a) is applicable against any party who sells or offers to sell an allegedly infringing product. But in cases where the manufacturer of a product and the retailer of the same product are accused of infringement, district courts,

including those in the Fifth Circuit, have routinely treated the manufacturer as the "true defendant" in the dispute, with the claims against a retailer characterized as merely peripheral. *In re Nintendo of Am., Inc.* 756 F.3d at 1365 (Fed Cir. 2014)(court acknowledged that while some of the Retail Defendants' stores were located in the original venue, none "had any information relating to the development or design of the accused [products]."); *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 811 (E.D. Va. 2001)(holding that claims against a reseller were peripheral because the reseller was not the manufacturer of the infringing product and would be liable only if the manufacturer infringed the patent); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 664 (S.D. Miss. 2013)(Patent infringement claims against a retailer, distributor, or customer of infringing products deemed peripheral to a claim against a manufacturer);

Plaintiff also asserts that damages from Nordstrom do not constitute double recovery, as it is entitled to base its damage calculations on Nordstrom's higher sales prices. The *In re Nintendo* court, *supra*, rejected the same argument, concluding the court concluded that such an argument did not prohibit transfer because the patent owner would have no claim against the retailer defendants unless liability was first established with respect to the manufacturing defendant, thus such an argument was inappropriate on a motion for severance. *In re Nintendo*, 756 F.3d at 1366.Here, EL has raised certain defenses, including non-infringement, which, unless resolved in the Plaintiff's favor, would necessarily lead to the dissolution of any claims against Nordstrom.

Therefore, severance in this matter is warranted as: (1) the remaining claims against Nordstrom, an innocent non-manufacturing retailer, are peripheral to the infringement claims against EL; (2) a finding of non-infringement for EL would adjudicate and dispose of the

2

remaining claims against Nordstrom; and (3) for reasons otherwise warranting transfer of the severed claims against EL under § 1404(a), as described below. *Koh v. Microtek Int'l, Inc.* 250 F. Supp. 2.d 627, 632 (E.D.Va. 2003)(citing three-factor standard for severance).

## II.   THE TRANSFER OF THE SEVERED CASE AGAINST EL WOULD BE PROPER AND APPROPRIATE AS THE SOUTHERN DISTRICT OF NEW YORK IS A MORE CONVENIENT FORUM.

Under28 U.S.C. § 1404(a), if the transferee venue is determined to be proper, the Court must proceed to analyze several private and public interest factors when analyzing for a transfer of venue. *See*, *ATEN Int'l Co. v. Emine Tech. Co.,* 261 F.R.D. 112, 123 (E.D. Tex. 2009). Should analysis of these factors result in the determination that another venue is "clearly more convenient," the case should be transferred. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

It is undisputed that the claims against EL could have been brought in New York, as New York is the state in which EL maintains its principal place of business. Because of this and "in the interest of justice," it is appropriate for the court to exercise its discretion in transferring venue to the Southern District of New York based on the weighing of the convenience factors. *Koh*, 250 F. Supp. 2d 627, citing *Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). *See also*, *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *4 (E.D. Tex. Mar. 18, 2010).

### A. *Private Interest Factors*

1. Relative Ease of Sources

In patent infringement cases, Courts have held that "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d

3

1338, 1345 (Fed. Cir. 2009). Upon a defendant's showing that a different venue is a more convenient forum, the district court cannot give too much deference to a plaintiff's choice of venue. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009)

While much of the document discovery in this case may ultimately be exchanged in electronic form, many of the documents relating to the products at issue are no longer available to EL because the products were commissioned for formulation and manufactured over a decade ago. *See*, Nohavicka Declaration at ¶ 8-9. As a result, EL anticipates that deposition testimony will comprise much of the discovery in this case, including from testimony of EL employees with personal knowledge of the instant matter, such as Patricia Schuffenhauer. Moreover, additional discovery may occur in the form of inspection of EL's facility or computers, or additional searches for hard copies of sales records will also take place in New York. The Court should accord weight to these items as access to *any* source of proof is still relevant and cannot be ignored in performing a §1404(a) analysis. *In re Volkswagen,* 545 F.3d at 316. As no relevant evidence regarding the accused products will be derived from the Southern District of Texas. For these reasons. Thus, this factor weighs in EL's favor of transfer.

　　　2.   Availability of Compulsory Process and Convenience of Witnesses

Plaintiff focuses its argument on whether EL's named witnesses are "compulsory." However, for the convenience of witnesses, courts consider all potential material and relevant witnesses, despite their importance to any party's case, and whether the witnesses reside or work within 100 miles of the court. *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014). Any witnesses, whether presently named as witnesses or later produced on behalf of EL will more than likely originate from the pool of witnesses comprised of EL employees located within EL's

principal place of business in New York. Thus, the factor for the convenience of witnesses, whether compulsory or not, weighs in favor of transfer.

### 3.   The Cost of Attendance for Willing Witnesses

Any witnesses pertinent to the Defendants' defenses, or to the circumstances surrounding the filing of the patents at issue, likely reside in the state of New York.  None reside in Texas. Since the "cost of attendance for willing witnesses" factor has arguably been the most important factor (*see*, *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)), and due to the long-standing Fifth Circuit principle that more weight should be given to the convenience of non-party witnesses (*see*, *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F.Supp.2d 703, 711 (N.D.Tex.2009)), this factor would therefore strongly favor transfer to New York.

In opposition, Plaintiff, for the first time in this case, identifies two non-party witnesses as necessary for Plaintiff's case. *See*, Plaintiff's Opposition Brief at pp. 6. The Plaintiff did not identify these individuals in its Initial Disclosures, but now identifies them to support its opposition to EL's motion. *See*, **EXHIBIT C**. However, the non-party witnesses in question have no relationship to the allegations against the defendants in this case; they were merely involved in a completely prior and distinct infringement action relating to the same patents. *Id.* at pp. 6 & 16. These witnesses can offer no personal knowledge of the accused products belonging to EL or any knowledge in relation to Nordstrom, nor can they attest to the particular circumstances of the instance litigation in the same manner as the witnesses offered by EL. Therefore, Plaintiff's witnesses in no way can be considered "key witnesses," and during a transfer analysis, "[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060

(S.D.Tex.1998); *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.,* 85 F.Supp.2d 663, 668 (S.D.Tex.1999).

4. <u>All Other Practical Problems That Make a Trial Easy, Expeditious and Inexpensive</u>.

In making its claim that there is no "substantial, tangible connection to New York," because the accused products were not manufactured in New York, Plaintiff repeatedly cites to one interrogatory response wherein EL stated: "No changes were made to the TranspHuse products, as the products were formulated and manufactured by different companies over a decade ago (i.e. Raffaelo, Mana and Thibant). Therefore, Defendant Erno Laszlo does not have the capacity, know-how or ability to change, modify or otherwise alter the creation, development or formulation of the TranspHuse Products." *See,* Exhibit F of Defendants' Motion at Interrogatory No. 8.

Plaintiff has taken EL's statement out of context, as the question asked of EL pertained to interrogatory asked only when EL discovered the Plaintiff's patents and "any changes [EL] made to [its] Products" upon discovery of the patents. *Id.* EL responded that it only became aware of the patents upon receiving Plaintiff's complaint, and that no action was taken in relation to the accused products upon discovery of the patents because Plaintiff was not the formulator, and thus, did not have the ability to change any aspects of the products' formula.

EL's inability to alter the formula, however, has no impact on EL's connection to New York. EL's principal place of business is in New York, it commissioned the formulation and manufacture of the products from New York, and any communications maintained with the formulators and manufacturers of the products were made from EL employees in New York. Once manufactured, the products were stored in EL's warehouse. Moreover, at least one manufacturer of the accused products, Mana, is also located in New York. *See,* **EXHIBIT B** for

6

a print-out from Mana's website indicating that they are headquartered in New York City. The majority of information related to this case is in New York and transfer should be granted.

### B. Public Interest Factors

The parties concede that the public factors relating to the familiarity of the proposed forum with the law governing the matter and any potential conflict of laws problems are two public interest factors that are inapplicable. Defendants address the remaining two public interest factors below.

1. The Administrative Difficulties Flowing From Court Congestion.

Plaintiff argues that transfer to the Southern District of New York would lead to inordinate administrative difficulties. As proof of its claims, Plaintiff offers a chart, with no explanation of the chart's authorship or statistical authenticity, which purports to show the median length of civil litigations being 29.2 months in the Southern District of New York, as opposed to the 21-month median for the Southern District of Texas. *See*, Exhibit G of Plaintiff's Opposition Brief.

These statistics, even if taken at face-value, offer no classification between ordinary civil cases and patent cases. Due to the special rules and procedures inherent in patent cases, courts have held this to be a neutral factor when presented with statistical data that did not provide data for patent cases. *Lear Corp. v. TS Tech USA, Inc.,* No. 2:07–CV–406 slip op. at *5-6 (E.D.Tex. Sept. 10, 2008); *In re TS Tech USA Corp.,* 551 F.3d 1315, 1319-20 (Fed. Cir. 2008); *See also, Odom v. Microsoft Corp.,* 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (Plaintiff did not point to median time for patent trials).Thus, this factor should be considered neutral in the Court's analysis.

2. <u>The Local Interest in Having Localized Interests Decided at Home</u>.

In patent cases where the accused product is sold all over the country, courts have held that no specific venue has a dominant interest in resolving the issue of patent infringement. *See In re TS Tech,* 551 F.3d at 1321 ("Here, [the accused products] were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"). Thus, in most patent cases, this factor will be neutral and would not weigh against transfer. *Odom,* 596 F. Supp. at 1003.

Furthermore, the Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a "substantial interest" in adjudicating a case locally because some allegedly infringing products found their way into their market. *See, In re Volkswagen,* 545 F.3d at 317–18; *TS Tech,* 551 F.3d at 1321. By contrast, where a forum has identifiable connections to the events giving rise to the suit, this factor may support litigating the case in that forum. *In re Volkswagen,* 545 F.3d at 318. EL has substantial connections to the state of New York and the products that are the basis of this suit. It is therefore respectfully submitted that this factor should be weighted in favor of transfer.

## III. THE COURT SHOULD STAY THE ACTION AGAINST NORDSTROM PENDING THE RESOLUTION OF THE SEVERED ACTION AGAINST EL.

As part of its request to sever and transfer the claims against EL, the Defendants respectfully request that the action against Nordstrom be stayed pending the outcome of the severed action on the grounds that, should EL gain a judgment in its favor, the action against Nordstrom would likewise terminate. In opposition to this request, Plaintiff cites to a 1936 Supreme Court case in which the court required a showing of extreme hardship and inequity that necessitates a stay of proceedings. *Landis v. N. Am. Co.,* 299 U.S. 248, 249, 57 S. Ct. 163, 164, 81 L. Ed. 153 (1936). But the facts of *Landis* are inapposite, as that case dealt with

8

constitutionality of a statute and the plaintiffs successfully argued that a stay—during which the challenged statute would continue to impact their businesses—was prejudicial. *Id.* The *Landis* Court held that"...there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger." *Id.* at 255.

The instant case does not give rise to any constitutional questions of law, nor are Defendants requesting that the Plaintiff be compelled to wait upon the outcome of a matter to which it is a stranger. Plaintiff will not be prejudiced in any way by a stay against Nordstrom, as the threshold issue it must prove—liability for patent infringement—rests entirely on its case against EL. Therefore, the *Landis* standard cannot be applicable to the instant case, and Defendants contend that the Fifth Circuit's three-factor test applies here. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. Feb. 9, 2005)("(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and  (3) whether discovery is complete and whether a trial date has been set.").

In its opposition, Plaintiff alleges that Nordstrom has been uncooperative in discovery by failing to identify witnesses having discoverable information. Plaintiff's Opposition Brief at p. 2-3. Plaintiff states that "Nordstrom affirmatively represented that it has no such employees or witnesses," *id.*, citing Nordstrom's Initial Disclosures as alleged support.  At best, Plaintiff's statement is a gross mischaracterization of the content of Nordstrom's Initial Disclosures. Nordstrom did not "affirmatively represent" that it had no witnesses.  But as a mere retailer, Nordstrom has no witnesses with knowledge of the formulation of the accused product, which is the central issue related to liability in this case, and the primary individuals with relevant information to Plaintiff's suit were identified. Plaintiff has previously been informed that

Nordstrom did not expect to call witnesses at trial but if any relevant witnesses were identified, Nordstrom would provide them at a reasonable time before trial. *See*, Exhibit G of Defendants' Motion at Interrogatory No. 10.

Regardless, and despite Plaintiff's attempt to mischaracterize Nordstrom's participation in the discovery process here, it is ultimately unlikely that, as a retailer joined in this case by Plaintiff to enhance its position on damages, Nordstrom will have much information relevant to Plaintiff's burden of proof. The Court in *In re Nintendo Co., Ltd.*, supra, stated:

> In all likelihood, the retailers will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add little to nothing regarding how the technology underlying the accused products works. Indeed, we and other courts have all but said as much in the analogous context of the "customer suit exception," which endorses staying a case against a customer or retailer in light of the notion that the manufacturer is the 'true defendant.'

*In re Nintendo Co., Ltd.*, 544 Fed.Appx. 934, 941 (Fed. Cir. 2013) (citing *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.Cir.1990); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir.1977)).That same logic applies here. Nordstrom is an innocent retailer. Pursuant to a long-time contractual agreement, Nordstrom agreed to sell various EL products, including the accused products. *See*, Defendant's Answer, **EXHIBIT A** at ¶ 11. As the Plaintiff was previously informed, the original agreement between the parties was executed sufficiently long ago that the actual contract between the parties has proven difficult to find. However, on November 16, 2015, Plaintiff was provided with a link to Nordstrom's Purchase Order Terms and Conditions which apply to its relationship with EL. Nohavicka Declaration at ¶ 11. Nordstrom has already provided Plaintiff with its sales numbers for the accused products, which is virtually the only evidence in its possession that would be relevant to the facts of this case. *See*, Exhibit of Plaintiff's Motion. In relation to Plaintiff's claims against EL, Nordstrom's

participation in the case and the discovery process is effectively complete, as Nordstrom has no other information relevant to Plaintiff's claims of infringement by EL's product. Any relevant discovery will originate with EL, and as noted above, will be found in New York. If EL is successful in establishing that the products do not infringe or that the patents are invalid, the matter will be at an end. By contrast, if Plaintiff is successful in establishing infringement, the stay against Nordstrom could be lifted to allow for resolution of any outstanding damages inquiry. Therefore, it is respectfully requested that the stay of the action against Nordstrom should be granted.

## IV.   THE TIME IN WHICH DEFENDANTS FILED THEIR MOTION HAS NO IMPACT OR BEARING ON THE MERITS OF THE MOTION AND DOES NOT WARRANT THE MOTION'S DISMISSAL.

Plaintiff argues that the alleged delay by Defendants in filing the instant motion provides a basis for denying Defendants' requests. Plaintiff cites one case in which a motion to transfer was denied for failure to file the motion "with reasonable promptness." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). In *Peteet*, the movants waited a total of eighteen months before filing their motion. *Id.* ("Dow's motion to transfer venue was not filed until eighteen months after the case was remanded to the Eastern District of Texas."). By contrast, Defendants' motion was delayed only two months over the busy holiday season. Regardless, however, such a minimal delay has no bearing or impact on the merits of Defendants' motion and Plaintiff can show no way in which it was prejudiced.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court should enter an order severing the claims against EL pursuant to FRCP 21, transferring those claims to the

Southern District of New York pursuant to 28 U.S.C. § 1404, and staying the action against

Nordstrom, pursuant to FRCP 26, pending the outcome of the severed action.


Dated: Astoria, New York
       February 4, 2016                        Respectfully submitted,

                                       **PARDALIS & NOHAVICKA, LLP**

By:

                                  TASO PARDALIS(*admitted pro hac vice*)
                                  *Attorneys for the Defendants*
                                  35-10 Broadway Suite 201
                                  Astoria, NY 11106
                                  Tel.: (718) 777 0400/Fax.: (718) 777 059

1   **UNITED STATES DISTRICT COURT**
    **SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**
2
    _____
3   BELFER COSMETICS, LLC,                    )   Civ. Case No. 15-CV-683
                                              )
    *Plaintiff,*                              )
4                                             )
                                              )
5            -v-                              )   **CERTIFICATE OF SERVICE**
                                              )
6   NORDSTROM, INC. and                       )
    ERNO LASZLO, INC.,                        )
7                                             )
    *Defendants.*                             )
8   _____)

9
            I HEREBY CERTIFY that on February 4, 2016, the foregoing **DEFENDANTS'**

10  **REPLY IN SUPPORT OF THEIR MOTION TO SEVER AND TRANSFER THE**

11  **ACTION AGAINST ERNO LASZLO, INC. AND STAY THE ACTION AGAINST**

12  **NORDSTROM, INC.** was served by mail in accordance with the Federal Rules of Civil

13  Procedure and the Local Rules of the Southern District of Texas upon the following

14  participants:

15
                        C. Dale Quisenberry, Esq.
16              **Polasek, Quisenberry&Errington, LLP**
                        6750 West Loop South, Suite 209
17                      Bellaire, Texas 77401

18  Dated: Astoria, New York
             February 4, 2016
19
                                **PARDALIS & NOHAVICKA, LLP**
20

21
                        By:
22                              TASO PARDALIS (*admitted pro hac vice*)
                                *Attorneys for the Defendants*
23                              35-10 Broadway Suite 201
                                Astoria, NY 11106
24                              Tel.: (718) 777 0400/Fax.: (718) 777 0599

25

                                        13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**

| | |
|---|---|
| BELFER COSMETICS, LLC, | ) |
| | ) |
| *Plaintiff,* | ) Civ. Case No. 15-CV-683 |
| | ) |
| -v- | ) |
| | ) |
| NORDSTROM, INC. and | ) Hon. Lee H. Rosenthal |
| ERNO LASZLO, INC., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**DECLARATION OF JOSEPH D. NOHAVICKA, ESQ. IN SUPPORT OF
DEFENDANTS' MOTION TO SEVER THE ACTION AGAINST ERNO LASZLO,
INC.; TRANSFER VENUE OF THE SEVERED ACTION; AND STAY THE ACTION
AGAINST NORDSTROM, INC.**

JOSEPH D. NOHAVICKA, ESQ. declares under penalty of perjury, pursuant to 28

U.S.C. § 1746, that the following is true and correct:

1.      I am a partner of the law firm PARDALIS & NOHAVICKA, LLP, the attorneys

for the Defendants, Erno Laszlo, Inc. ("EL") and Nordstrom, Inc. ("Nordstrom").

2.      I submit this declaration in support of the Defendants' motion to sever the action

against EL and transfer the severed action to the Southern District of New York, while staying

the matter against Nordstrom pending the outcome of the severed action.

3.      This declaration is made upon personal knowledge and based upon a review of

the file kept in our office.

4.      Annexed hereto as Exhibit A is a true and accurate copy of the Answer with

Counterclaims, with accompanying exhibits, filed by the Defendants in the matter. (Dkt. 17).

5.      Annexed hereto as Exhibit B is a true and accurate copy of a print-out from the

website of Mana Products, one of the manufacturers of the products being accused of

14

infringement in this action. This exhibit is being offered for the purpose of showing that Mana is located and headquartered in New York City.

6.      Annexed hereto as Exhibit C is a true and accurate copy of Plaintiff's FRCP 26(a) Initial Disclosures filed on August 28, 2015. (Dkt. 31).

7.      EL is also a cosmetic company headquartered in New York, and the owner of cosmetic products that are being accused of infringing the Plaintiff's patents in this action.

8.      Our clients have informed us that the accused products were being retailed by Nordstrom pursuant to a long-standing business relationship that the Defendants had. According to our clients, their contract is not exclusively limited to the sale of the accused products.

9.      During the discovery that has taken place thus far in this litigation, EL has consistently told us that they are having difficulty finding much relevant and discoverable information relating to the accused products due to the fact that the products were originally formulated and manufactured over a decade ago, and are currently no longer being manufactured.

10.     The same was reiterated to Plaintiff's counsel, Dale Quisenberry, by myself or other attorneys at my firm.

11.     Furthermore, as Nordstrom is just the retailer of the accused products and had no involvement in the products' formulation or manufacture, the only discoverable and relevant information that has been available for production at this time were Nordstrom's sales numbers, which were provided to Plaintiff. *See*, Exhibit G of Defendants' Motion.

12.     As the Defendants were unable to locate their original contract agreement from years ago, on November 16, 2015, Plaintiff was provided with a link to Nordstrom's Purchase Order Terms and Conditions which apply to its relationship with EL.

13.     Pursuant to conversations with our clients, Plaintiff was also informed that no Nordstrom witnesses were expected to be called during this litigation, however, should this change, Nordstrom would inform the Plaintiff at a reasonable time before trial. *Id.*

14.     In an attempt to facilitate the progress of this litigation, however, myself or other members of my staff made multiple requests for Plaintiff to provide us with dates for the scheduling of depositions of our clients so that Plaintiff's counsel could try to personally obtain any more information directly from them. To date, Plaintiff has not responded to this request.

15.     In their Answer, Defendants asserted multiple defenses which include prior commercial use, non-infringement and invalidity of the patents. *See*, Exhibit A.

16.     Due to the fact that any further discovery which may occur in relation to the accused products and/or witnesses from the pool of EL employees would arise from the state of New York, Defendants now seek to sever and transfer the claims against EL to the Southern District of New York, while staying the action against Nordstrom.

17.     Should EL receive a favorable judgment, the stayed action against Nordstrom would no longer exists.

18.     I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 4, 2016
       New York, New York

JOSEPH D. NOHAVICKA, ESQ.
**PARDALIS & NOHAVICKA, LLP**
*Attorneys for Defendants*
35-10 Broadway, Suite 201
Astoria, NY 11106
Tel: 718-777-0400/Fax: 718-777-0599

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**

| | | |
|---|---|---|
| BELFER COSMETICS, LLC, | ) | Civ. Case No. 15-CV-683 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -v- | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| NORDSTROM, INC. and | ) | |
| ERNO LASZLO, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

I HEREBY CERTIFY that on February 4, 2016, the foregoing **DECLARATION OF JOSEPH D. NOHAVICKA, ESQ. IN SUPPORT OF DEFENDANTS' MOTION TO SEVER THE ACTION AGAINT DEFENDANT ERNO LASZLO, INC., TRANSFER VENUE OF THE SEVERED ACTION, AND SUBJECT THERETO, STAY THE ACTION AGAINST DEFENDANT NORDSTROM, INC.** was served by mail in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas upon the following participants:

C. Dale Quisenberry, Esq.
**Polasek, Quisenberry&Errington, LLP**
6750 West Loop South, Suite 209
Bellaire, Texas 77401

Dated: Astoria, New York
February 4, 2016          **PARDALIS & NOHAVICKA, LLP**

By: _____

Taso Pardalis(*admitted pro hac vice*)
*Attorneys for the Defendants*
35-10 Broadway Suite 201
Astoria, NY 11106
Tel.: (718) 777 0400/Fax.: (718) 777 0599